422 P.2d 141

Nan DAUGHERTY and Ray Daugherty,
her husband, Appellants,

v.

MONTGOMERY WARD, an Illinois
corporation, Appellee.

No. 1 CA–CIV 276.

Court of Appeals of Arizona.

Jan. 10, 1967.

Rehearing Denied Feb. 9, 1967.

Review Granted March 7, 1967.

Gorey & Ely, by Herbert L. Ely, Phoenix, for appellants.

Snell & Wilmer, by John J. Bouma, Phoenix, for appellee.

STEVENS, Judge.

This appeal relates to the liability of a business to its business invitee for personal injuries sustained by the invitee in an attempt to be seated upon a chair equipped with casters.

Nan Daugherty, herein referred to as the plaintiff, is a housewife. The defendant, Montgomery Ward, issued a sales contract. Thereafter problems arose in relation to that contract, and the plaintiff was invited to the defendant's business office to discuss the matter. On 4 October 1961, she went to the defendant's office with an adult son, the youngest of her four children. The office was located in a new building which had first been occupied the previous August. The plaintiff was directed to the desk of a woman employee. This employee, who was no longer employed by the defendant at the time of the trial, did not testify. The employee experienced difficulty in locating the proper file. During this time, the plaintiff and her son stood at the desk for a period of 10 to 20 minutes. As the employee turned to leave the room to search for the missing information, "She said, 'Have a chair, it's going to be a little while'", or some substantially similar phrase. With that comment she pushed the chair in question toward the plaintiff and then left the room.

The plaintiff and her son were then alone in the room. There were no other witnesses to the events which immediately followed. The testimony of the plaintiff is not fully consistent as to these occurrences. There was some variance between her testimony and the testimony of her son. The facts developed rapidly. It is not clear whether

the chair was moving or stationary at the time the plaintiff attempted to be seated thereon. It is not clear whether she actually momentarily sat on the edge of the chair and then fell or failed to touch the chair as she was in the process of seating herself. It is clear, however, that she sat on the floor and injured herself. The evidence established that the chair came to rest a short distance from her position on the floor.

Among the exhibits introduced in evidence are two photographs which have been reproduced and incorporated in this opinion. The photographs disclose the type of chair, desk and floor in question. The

floor was smooth, shiny and possibly slippery. It is agreed, however, that the plaintiff did *not* slip and fall due to a slippery floor surface. All of the furniture including the chairs were new. The chairs rolled easily on the floor surface. Another former employee, who testified for the plaintiff, stated that he was not accustomed to sitting on this type of chair, but *instead* upon chairs "without wheels, with legs". He also testified that the defendant had chairs with legs and without wheels which were available.

"Q   And for what purpose were they used?

"A   Normally for customers who had questions about their accounts and so forth, usually set up those chairs."

He was then asked the following question to which he answered:

"Q   You remember what the purpose was that this chair here was used?

"A   By all employees in that department."

There was no evidence that the chair was defective in construction or design.

At the trial, the jury returned a modest verdict for the plaintiff. The defendant, having protected its record by timely motions, filed its "Motion for Judgment in Ac-

cordance with Motion for Directed Verdict or for New Trial". This dual motion was properly continued to 21 June 1965 for oral argument. The record before us fails to reflect that an order was entered on 21 June. The next minute entry order is dated 24 June and is as follows:

"IT IS ORDERED setting aside the verdict.

"FURTHER ORDERED granting Motion for Directed Verdict for Defendant."

Shortly thereafter, a formal written order was signed by the judge and filed with the clerk. It recites:

"JUDGMENT

This cause came on to be heard on the defendant's Motion to Set Aside the Verdict and Judgment for plaintiffs and to order judgment for defendant in accordance with the previous Motion for Directed Verdict, and in the alternative for a new trial, and the Court having heard the argument of counsel, and being fully advised, it is

ORDERED that the verdict and judgment be set aside and judgment be entered herein for the defendant and against the plaintiffs and that defendant have judgment and for their costs herein incurred."

Our first consideration is directed to a procedural matter. The first opinion in the case of Zugsmith v. Mullins, 81 Ariz. 185, 303 P.2d 261 (1956), held that where a motion for judgment N.O.V., or in the alternative for a new trial, was taken under advisement and the motion was granted in relation to the N.O.V. only, the motion for new trial remained under advisement. Thereafter, Rules 50(b) and 50(c) of Civil Procedure, 16 A.R.S., were both amended. Rule 50(c) directs the trial court to rule upon both motions.

■ In relation to motions for new trial, Rule 59(e) is as follows:

"Time for determination of motion.

Motions for new trial shall be determined within twenty days after rendition of judgment, and if not so determined shall be deemed denied, unless continued by order of the court, or by stipulation."

Since the defendant's motion for new trial was not continued beyond 21 June, the motion was thereby denied by operation of law. More than 60 days has since expired. Should we be so inclined, we could not reverse this cause with directions to grant a new trial since the posture of this motion does not conform to the procedural situation which confronted the Arizona Supreme Court in Zugsmith.

■ The jury was instructed on the subject of the plaintiff's claimed contributory negligence and that issue was resolved in her favor. The question remains as to whether there was any proof of negligence on the part of the defendant. This issue was timely and properly raised by the defendant's motion for a directed verdict at the close of the plaintiffs' case, at the close of all of the evidence, and in the motion for judgment N.O.V. We agree that the floor condition alone did not establish negligence on the part of the defendant. We agree that there is an absence of any showing as to a defect in the design or the construction of the chair in question. We have been cited to cases which could be called the "throw rug" cases, Brown v. Davenport Holding Co., 134 Neb. 455, 279 N.W. 161, 118 A.L.R. 423 (1938); Cutro v. Scranton Medical Arts Bldg., 329 Pa. 382, 198 A. 141 (1938), wherein recovery was denied as a matter of law. These cases are persuasive and the reasoning therein could be applied to the situation now before this Court. We are of the opinion, however, that the facts in this case present a jury question. A review of some of the Arizona cases involving injury to business invitees will support this conclusion.

In the leading case of Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957), the plaintiff was delivering kegs of beer to the defendant by way of a dimly lighted passageway in the defendant's building. The plaintiff was injured when he fell into an open trap door leading to the defendant's

basement. The court held that the defendant owed to the plaintiff-invitee, who delivered regularly to the defendant but was unaware of the existence of the trap door, a duty to warn him of "the existence and nature of such potential or actual danger". The present situation is analogous to this in that the plaintiff was also unaware of the characteristics of the chair.

In Moore v. Southwestern Sash & Door Co., 71 Ariz. 418, 228 P.2d 993 (1951), the plaintiff lost three fingers while helping to plane some of his lumber on a mechanically operated machine at the defendant's place of business. Plaintiff was a building contractor and was "generally familiar with mechanical saws and machinery used in the trade, and on previous occasions had been in defendant's mill and observed same in operation". The plaintiff knew the danger of this type of machine and admitted the injury was caused by his carelessness. The Arizona Supreme Court stated that:

"Defendant was not bound to warn plaintiff of a peril and risk, which was open and obvious, and was or should have been appreciated by him as a man of ordinary prudence."

A distinguishing fact in the Moore case is that the plaintiff recognized and appreciated the open and obvious danger.

In the recent case of Murphy v. El Dorado Bowl, Inc., 2 Ariz.App. 341, 409 P.2d 57 (1965), this Court held that there was a jury question in relation to the defendant's liability for the plaintiff's injury even though the danger was obvious and well known to both the plaintiff and the defendant. The plaintiff stepped off a recessed walkway while concentrating on the course of his bowling ball proceeding down the alley. It was held that the owner could be found liable even though the dangerous condition was known or obvious if it could be anticipated that the injured party might forget about the condition.

The evidence established that there were straight-leg chairs without casters available for the use of the customers. The jury must have concluded that it was negligence to offer to the plaintiff a chair of the type and construction offered to her, a chair which would be safe if one seated one's self thereon fully and properly, but potentially dangerous to the uninitiated, a housewife. The jury could have concluded that there was a duty on the part of the defendant to warn plaintiff as to this potential danger which was not obvious to her. As before stated, the absence of the plaintiff's contributory negligence was resolved by the jury. The jury also decided the question of the defendant's negligence. In our opinion, the court erred in granting the defendant's motion for judgment N.O.V.

This cause is reversed and remanded with instructions to reinstate the judgment in favor of the plaintiff.

DONOFRIO, J., and JACK L. OGG, Judge of Superior Court, concur.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Superior Court Judge JACK L. OGG was called to sit in his stead and participate in the determination of this cause.