629 P.2d 95

**Esther SHIRKEY and Charles Shirkey, wife and husband, Plaintiffs/Appellees,**

v.

**CRAIN & ASSOCIATES MANAGEMENT COMPANY, INC., dba Villa Serenas Apartments, Defendant/Appellant.**

**No. 2 CA–CIV 3768.**

Court of Appeals of Arizona, Division 2.

March 13, 1981.

Rehearing Denied April 15, 1981.

Review Denied June 2, 1981.

Davis, Siegel, & Gugino, by Stuart J. Siegel, Tucson, for plaintiffs/appellees.

Donald Estes, Tucson, for defendant/appellant.

## OPINION

BIRDSALL, Judge.

Appellant leased an apartment in its complex to appellees. A "soap and grab" fixture was installed in the tile wall by the tub in the bathroom of the unit. Appellee, Charles Shirkey, was injured when the fixture came out of the wall as he was using it to support himself in getting out of the tub. A jury was waived and the trial court awarded damages to appellees for the injuries sustained. This appeal followed.

The standard of care for the landlord to his tenant as set forth in *Cummings v. Prater*, 95 Ariz. 20, 386 P.2d 27 (1963) is:

"[T]he landlord is under a duty of ordinary care to inspect the premises when he has reason to suspect defects existing at the time of the taking of the tenancy and to either repair them or warn the tenant of their existence". *Id.* at 26, 386 P.2d at 31.

In that case the Supreme Court quoted from 2 Harper & James, the Law of Torts, Sec. 27.13, the following as a test for determining whether a condition is unreasonably dangerous:

"If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight". *Id.* at 27, 386 P.2d at 31.

In *Presson v. Mountain States Properties, Inc.*, 18 Ariz.App. 176, 501 P.2d 17 (1972), Division One held that the landlord had a duty to repair unreasonably dangerous instrumentalities that could foreseeably cause injury to the tenant. The court, however, refused to apply the contractual theory of implied warranty of habitability, a more strict standard which has been followed in some states. *See* Annot., 64 A.L.R.3d 339 (1975).

The Supreme Court applied *Prater* in deciding *McFarland v. Kahn*, 123 Ariz. 62, 597 P.2d 544 (1979).

*Prater* involved a stone slab several inches higher than the path leading to the garbage cans in the alley. The court held that the slab did not constitute an unreasonably dangerous condition. In *McFarland* the injury resulted from a youngster tripping over a lawn sprinkler head and the

court held that since it was open and obvious, it was not unreasonably dangerous.

We must consider the evidence in this case involving the soap and grab most favorably to support the trial court's finding of liability applying the law as set out in *Prater.*

The soap and grab was a bathroom fixture installed in the third tile above the tub. It could be installed any place on the bathroom wall near the tub and is often installed in the fourth tile where it would be 12¾″ from the top of the tub. The point of installation is not an issue. The unit has a receptacle for a bar of soap and a bar which is used for hanging a wash cloth or for people to hold while maneuvering in or getting out of the tub. Although the unit is not intended to support a person getting out of the tub it is commonly used in that manner. The soap and grab in this case was porcelain and had only ¼″ for recess into the wall. Other models have either more recess or are made of metal thus making them safer. In order to properly install the porcelain ¼″ model extra precautions should be taken to fasten and cement it to the wall so that it will not come out as it did in this case.

Without removing the unit from the wall no one could tell how securely it was fastened. Nor could one tell it was a ¼″ recess model. Appellees' expert witness, an experienced licensed ceramic tile contractor, testified there was no way to tell the model or manner of installation without completely removing it from the wall. Not even a person familiar with such installation would know unless he installed it. There is no evidence that appellant either installed the unit or had it installed or that any such unit had proven defective in any of the other apartments. There is no evidence that anyone knew that either the unit or its installation was in any way defective. Appellant's employee, engaged to do light maintenance work around the apartments, testified that, prior to this incident, he had told some of the female tenants not to use the soap and grab to get out of the tub because he believed it was not intended for that purpose.

The sole issue in this case is whether appellant should have suspected the soap and grab as installed constituted a dangerous condition. If so then it was under a duty to either repair it or to warn appellees. If not, then it should not be held liable.

Since appellant did not know that the soap and grab had not been properly installed and had no way of knowing without removing the unit and had no reason to believe it should have removed it for the purpose of inspection, there is no way that it could have suspected that it was dangerous because of its installation.

Can appellant be held liable because the soap and grab, because of its location and appearance, was likely to be used by tenants to support themselves while getting out the bathtub? There is no reason to find that appellant should have any greater foresight in this regard than the tenants themselves. Applying the test from *Harper & James,* supra, the tenants could be expected to take perfectly good care of themselves without further precautions. We fail to see how appellant acted unreasonably in not warning appellees that the soap and grab should not be used for support when, if appellant is presumed to have such knowledge, then appellees should be presumed to have the same knowledge.

The judgment of the trial court is not supported by the evidence under applicable law.

Reversed and remanded with directions to enter judgment in favor of appellant.

HATHAWAY, C. J., and HOWARD, J., concur.